IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| FURNITURE SOLUTIONS & RESOURCES,<br>            Plaintiff,<br><br>        v.<br><br>SYMMETRY OFFICE, LLC,<br>JAMES BALDWIN & JOSHUA PHILLIPS,<br>            Defendants. | CIVIL ACTION<br>NO. 15-4774 |

**Jones, II    J.**                                                                                   **December 21, 2015**

## MEMORANDUM

### I. Background

Furniture Solutions & Resources ("Plaintiff") is suing Symmetry Office ("Defendant Symmetry"), James Baldwin and Joshua Phillips (the "Representative Defendants") (collectively "Defendants") for: (Count I) breach of contract, (Dkt No. 9 [hereinafter AC] ¶¶ 48-62), (Count II) breach of the implied covenant of good faith and fair dealing, (AC ¶¶ 63-75), (Count III) unjust enrichment, (AC ¶¶ 76-87), and (Count IV) tortious interference. (AC ¶¶ 88-95.)

For the purposes of the Motion to Dismiss, the Court will construe all allegations in the Amended Complaint as true. On December 15, 2014, Plaintiff entered into a one-year sales agreement ("the Agreement") with Defendant Symmetry effective January 1, 2015. (AC ¶¶ 9-10; Dkt No. 9, Ex. A [hereinafter SA].) The Agreement granted Plaintiff the exclusive right to sell Defendant Symmetry's products in a defined territorial area for a period of one year (January 1, 2015 to December 31, 2015). (SA ¶¶ 1-3.) "In return for the territorial exclusivity, [Plaintiff] agree[d] not to sell or promote products deemed competitive by [Defendant Symmetry]." (SA ¶ 3.) However, the Agreement contemplated that Defendant Symmetry "agrees and recognizes the desire of the Representative to work with additional manufacturer…" (SA ¶ 3.) The Agreement stated Defendant Symmetry would "not [] unreasonably refuse" Plaintiff permission to work with additional manufacturers, upon notice from Plaintiff given at least thirty days prior to accepting such new product lines. (SA ¶ 3.) Attached to the Agreement, on Defendant Symmetry's letterhead, was a list of manufacturers, including ALEA. (AC ¶ 13; SA.) Plaintiff

1

was to be paid by Defendant Symmetry according to a Discount and Commission Schedule outlined in the Agreement. (SA at 2-3.) The Agreement contained specific language regarding how to terminate the contract. (SA at 5.) The Agreement further stated that it was to be governed by the laws of the State of Florida. (SA at 5.)

Prior to entering into the Agreement with Defendant Symmetry, Plaintiff had represented a different manufacturing company, ALEA. (AC ¶ 25.) On April 17, 2015, a representative of Defendant Symmetry, Scott Grisack, informed Plaintiff that "You need to drop Alea as a client effective immediately." (AC ¶ 22.) A representative of Plaintiff responded to Defendant Symmetry that Plaintiff refused to immediately "drop Alea," that such a request was in violation of the Agreement, and that they would like to discuss it further. (AC ¶ 25.) Defendant Symmetry told Plaintiff that ALEA was a direct competitor with competitive products and that Plaintiff's representation of ALEA was in direct contravention of the Agreement. (AC ¶¶ 25-26.) Defendant Symmetry told Plaintiff that if Plaintiff continued to represent ALEA, Defendant Symmetry would terminate the Agreement. (AC ¶ 28.) Plaintiff countered that ALEA was not a direct competitor of Defendant Symmetry. (AC ¶¶ 26-27, 29-30.) Defendant Symmetry refused to discuss the matter further with Plaintiff. (AC ¶ 31.)

On April 21, 2015, Defendant Phillips sent a letter to Scott Pitel and Caleb Tolen of Plaintiff, stating "per our emails this morning, we are terminating [Defendant Symmetry's] contract with [Plaintiff] effective April 21, 2015." (AC ¶¶ 32-33; Dkt No. 9, Ex. B [hereinafter Termination Ltr.].)

Beyond the ALEA issue, Plaintiff performed its role as a Representative according to the terms of the Agreement. (AC ¶¶ 36, 40.) Plaintiff has not been paid all the commissions it earned under the Agreement. (AC ¶¶ 37-39.) Defendant Symmetry has hired Representative Defendants as representatives to perform services in direct competition to Plaintiff in the exclusive territory given to Plaintiff in the Agreement. (AC ¶¶ 41-47.)

On October 8, 2015, Defendants moved to dismiss the Amended Complaint. (Dkt No. 10 [hereinafter MTD].) On November 9, 2015, Plaintiff responded. (Dkt No. 13 [hereinafter Resp.].)

## II.     Standard of Law

### a.  Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

### b.  Pennsylvania Law Applies

There are three jurisdictions/states whose laws could potentially apply to this case: Florida, Pennsylvania, and New Jersey. The Agreement has a Florida choice of law provision. (SA at 5.) Plaintiff is a resident of Pennsylvania and Defendants are residents of Florida and New Jersey. This case was brought in Pennsylvania. Because this is a diversity case, and this Court sits in the Eastern District of Pennsylvania, this Court applies the choice of law rules of the forum state, Pennsylvania. *See Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013).

Under Pennsylvania choice-of-law rules, "the first question to be answered...is whether the parties explicitly or implicitly have chosen the relevant law." *Assicurazioni Generali, S.P.A. v. Clover,* 195 F.3d 161, 164 (3d Cir.1999)). Where the parties agree on the applicable state's law, the Court will, generally, not need to engage in a choice of law analysis and will instead apply the agreed-upon state's laws. *See, e.g.*, *Henkel Corp. v. Hartford Acc. & Indem. Co.*, 399 F.Supp.2d 607, 610 (E.D. Pa. 2005); *City of Philadelphia v. One Reading Ctr. Assoc.,* 143 F.Supp.2d 508, 512 (E.D. Pa. 2001). If the parties disagree, the Court must analyze the various

jurisdictions' laws for the relevant claims and determine whether there is an "actual or real conflict between the potentially applicable laws." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d.Cir. 2007). Where there are no real conflicts, the Court need not continue with the choice of law analysis. *Id.* If a true conflict is present, the Court analyzes "the governmental interests underlying the issue and determine[s] which state has the greater interest in the application of its law to the matter at hand." *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 866 (Pa. Super. 2006) (citing *Ratti v. Wheeling Pittsburgh Steel Corp.*¸ 758 A.2d 695, 702 (Pa. Super. 2000)); *see also Griffith v. United Airlines, Inc.*, 203 A.2d 796, 805-06 (1964).

The Court ordered the parties to brief the Court on this issue. Defendants argue that no real or true conflict exists between Florida, Pennsylvania, and New Jersey law, excepting standards for punitive damages; thus, they argue, the Court need not definitively rule on the choice of law question, but apply Pennsylvania law for the purposes of this Motion for all claims. (Dkt No. 15 [hereinafter Defs' Br. on Choice of Law].) As to punitive damages, Defendants argue that Pennsylvania has greater contacts to the underlying claims in the case and thus, Pennsylvania law should also apply. (Defs' Br. on Choice of Law.) Plaintiff argues that there exists only false conflicts between the three jurisdictions, and, that Pennsylvania has the most relevant contacts regardless. (Dkt No. 16 [hereinafter Pl's Br. on Choice of Law].)

In summary, there is no conflict between the parties as to which law should apply. All agree, with Pennsylvania proving victorious. Given that there is no disagreement between the parties, the Court need not conduct a choice of law analysis. The Court will apply Pennsylvania law.

### III.   Discussion

Defendants have moved to dismiss all claims against the Representative Defendants. Additionally, Defendants have moved to dismiss Plaintiff's claims for breach of the implied covenant of good faith and fair dealing (Count II), unjust enrichment (Count III), and tortious interference (Count IV) against Defendant Symmetry. Defendants also seek to dismiss Plaintiff's demand for punitive damages in an ad damnum clause.

#### A.   *Breach of Contract (Count I)*

In Count One of its Amended Complaint, Plaintiff asserts a breach of contract claim against all Defendants. (AC ¶¶ 48-62.) Defendants argue that the breach of contract claim against the Representative Defendants must be dismissed because neither were parties to the Agreement

between Plaintiff and Defendant Symmetry. (MTD at 8-9.)[1] In response, Plaintiff concedes that it "does not claim express breach of contract against Baldwin and Phillips." (Resp. at 8.) Thus, it appears that insofar as Plaintiff alleged any claims for breach of contract against the Representative Defendants, Plaintiff has abandoned such claims. Plaintiff's Count I breach of contract claim against the Representative Defendants is hereby dismissed with prejudice.[2]

### B.   Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)

In Count Two of its First Amended Complaint, Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing. (AC ¶¶ 63-75.) Defendants argue that this claim should be dismissed entirely because Pennsylvania law does not recognize an independent cause of action for breach of implied covenant of good faith and fair dealing. (MTD at 9-10.)

Under Pennsylvania law, breach of the implied covenant of good faith and fair dealing is not an independent cause of action separate from a breach of contract cause of action. *See, e.g.*, *Kantor v. Hiko Energy, LLC*, 2015 WL 1650049, at *6 (E.D. Pa. 2015); *Cummings v. Allstate Ins. Co.*, 832 F. Supp. 2d 469, 472-73 (E.D. Pa. 2011); *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 391 (Pa. Super. 2008) (quoting *McHale v. NuEnergy Grp.*, 2002 WL 321797, at *8 (E.D. Pa. 2002). Instead, claims for breach of the implied covenant of good faith and fair dealing become subsumed within a breach of contract claim. *See Kantor*, 2015 WL 1650049, at *6. Therefore, a claim for breach of the covenant of good faith and fair dealing survives—not on its own—but only as a component of a breach of contract claim.

---

[1] Defendants do not move to dismiss the breach of contract claim against Defendant Symmetry.

[2] The Court notes that upon independent review, it further finds that claims against the Representative Defendants for breach of contract could not stand. In Pennsylvania, "[i]t is a well established principle of law that a contract cannot legally bind persons not party thereto." *In re Barilla*, 535 A.2d 125, 128 (Pa. Super. 1987). Therefore, "[u]nder Pennsylvania law, generally a person not a party to the contract cannot be liable for a breach." *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 n.4 (3d Cir. 1976); *see also Charbonneau v. Chartis Prop. Cas. Co.*, 2015 WL 3999592, at *11 (E.D. Pa. 2015); *CGB Occupational Therapy, Inc. v. RHA/Pennsylvania Nursing Homes, Inc.*, 2001 WL 1175150, at * 4 (E.D. Pa. 2001); *Viso v. Werner*, 471 Pa. 42, 46 (1977) (quoting *Geyer v. Huntingdon County Agricultural Assn*, 362 Pa. 74, 77 (1949)). The Court recognizes that under Pennsylvania law, in some circumstances, a contract may bind non-parties who are found to be third-party beneficiaries. *Pennsylvania v. Noble C. Quandel Co.*, 585 A.2d 1136, 1140 (Pa. Commw. 1991). In this case, Plaintiff makes no argument that the Representative Defendants are third-party beneficiaries.
  The Representative Defendants were not parties to the Agreement. (*See* SA, Resp. at 2, 11.) Because the Representative Defendants were not parties to the Agreement, they cannot be liable for a breach by one of the parties to the Agreement. *See, e.g.¸ Fox Fuel v. Delaware County School Joint Purchasing Board*, 856 F. Supp. 945, 947 (E.D. Pa. 1994); *Fleetway Leasing Co. v. Wright*, 697 A.2d 1000, 1003 (Pa. Super. 1997).

Plaintiff's Count II claims regarding breach of the covenant of good faith and fair dealing are subsumed by Count I's breach of contract claims, insofar as such claims remain. Plaintiff's Count II is dismissed with prejudice.

### C.   *Unjust Enrichment (Count III)*

In Count Three of its First Amended Complaint, Plaintiff asserts a claim for unjust enrichment. (AC ¶¶ 76–87.) Defendants argue that claims for unjust enrichment do not apply where, as here, a contract exists. (MTD at 10-11.) Plaintiff responds by arguing that the claim should survive because the basis for its claim is not the alleged breach of the Agreement. Plaintiff also stresses that the Representative Defendants were not parties to the Agreement and, therefore, Plaintiff may pursue an unjust enrichment claim against them.

#### 1.   Against Defendant Symmetry

Under Pennsylvania law, "[u]njust enrichment is a 'quasi-contractual doctrine' that does not apply in cases where the parties have a written or express contract." *See e.g.*, *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012); *see also Montanez v. HSBC Mortg. Corp.*, 876 F. Supp. 2d 504, 515-17 (E.D. Pa. 2012); *Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664, 669 (Pa. Super. 2007); *Roman Mosaic & Tile Co. v. Vollrath*, 313 A.2d 305, 307 (Pa. Super. 1973). Here, the relationship between Plaintiff and Defendant Symmetry is clearly founded upon their express, written Agreement. (SA.)

Plaintiffs are entitled to plead unjust enrichment in the alternative, but only when there is some dispute as to whether the contract at issue is enforceable. *Montanez*, 876 F. Supp. 2d at 516. Here, there is no dispute that the Agreement between Plaintiff and Defendant Symmetry is valid and enforceable. Thus, Plaintiff's Count III unjust enrichment claim against Defendant Symmetry is dismissed with prejudice.

#### 2.   Against Defendants Baldwin and Phillips

Because there is no contract between Plaintiff and the Representative Defendants, the analysis set forth in the previous section does not apply to the claim against the Representative Defendants. *Montanez*, 876 F. Supp. 2d at 516-17. Defendants make no distinct argument with respect to the claims for unjust enrichment against the Representative Defendants. Rather, they reiterate that an express contract exists and, therefore, the unjust enrichment claim must be dismissed against all defendants. As the Court has already found that the Representative

Defendants are not parties to the Agreement, the claims against them for unjust enrichment cannot be dismissed on the grounds that an express contract exists. Instead, the Court must review the unjust enrichment claims against the Representative Defendants on the merits.

In Pennsylvania, a plaintiff must demonstrate three elements in pleading an unjust enrichment claim: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Id.* at 517 (quoting *Kliesh v. Select Portfolio Servicing, Inc.*, 2012 WL 2500973, at *8 (E.D. Pa. 2012)).

In its Amended Complaint, Plaintiff specifically alleges that the Representative Defendants have obtained and appreciated benefits, conferred upon them by Plaintiff: salaries and commissions pursuant to their sales in the exclusive territory boundaries at issue in this case. (AC ¶¶ 77, 79-80.) Plaintiff also alleges that it would be inequitable and unjust for Representative Defendants to retain these benefits. (AC ¶¶ 81-82, 84.) Defendants' Motion does not address these allegations. At this time, the Court denies Defendants' Motion to dismiss the claims for unjust enrichment against the Defendant Representatives.

### D.      Tortious Interference (Count IV)

In Count Four of its Amended Complaint, Plaintiff asserts a claim against all Defendants for tortious interference. (AC ¶¶ 88–95.) "To state a claim for tortious interference with contract, a party must allege: (1) an existing contractual relationship; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." *Alpart v. General Land Partners, Inc.*, 574 F. Supp. 2d 491, 505 (E.D. Pa. 2008). Defendants offer two bases for dismissal of this count. First, Defendants argue that the claim is insufficiently pled. Second, Defendants argue that the claim is precluded by the "gist of the action doctrine." The Court finds the gist of the action doctrine dispositive.

The gist of the action doctrine looks to the source of the claims asserted and evaluates whether tort claims pleaded alongside contract claims constitute independent causes of action. *Id.* at 499. The Third Circuit has explained the gist of the action doctrine under Pennsylvania law:

> [T]o be construed as a tort action, the [tortious] wrong ascribed to the defendant must be the gist of the action with the contract being collateral.... [T]he important difference between contract and tort actions is that the latter lie from the breach of

> duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581, 590 (1996) (en banc) (quoting *Phico Ins. Co. v. Presbyterian Med. Servs. Corp.,* 444 Pa.Super. 221, 663 A.2d 753, 757 (1995)). In other words, a claim should be limited to a contract claim when "the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." *Bash v. Bell Telephone Co.,* 411 Pa.Super. 347, 601 A.2d 825, 830 (1992).

*Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103-04 (3d Cir. 2001)(alterations in original). "Under Pennsylvania law, parties to the contract cannot be proper defendants for a tortious interference claim pertaining to that contract." *Alpart*, 574 F. Supp. 2d at 505 (citing *Maier v. Maretti,* 671 A.2d 701, 707 (Pa. Super. 1995)).

Undoubtedly, Defendant Symmetry is a party to a contract with Plaintiff. The tortious wrong ascribed to Defendant Symmetry is that Defendant Symmetry hired sales representatives (the Representative Defendants) who have performed services and made sales "within the exclusive territory" outlined in the Agreement. (AC ¶ 91.) Plaintiff asserts identical allegations in support of its breach of contract claim. (AC ¶ 58.) Indeed, Plaintiff's claim hinges upon the territorial exclusivity granted to it pursuant to the Agreement with Defendant. (AC ¶¶ 49, 58-61; SA ¶ 1.) Essentially, Plaintiff's tortious interference claim duplicates its breach of contract claim.

Despite Plaintiff's contentions otherwise, all of its allegations in support of its tort claim arise solely from a contract between Plaintiff and Defendant Symmetry. The duties Plaintiff relies on are grounded explicitly in that contract and, therefore, the liability stems from the contract. Thus, the gist of the action doctrine bars Plaintiff's tortious interference claim against Defendant Symmetry.

The gist of the action doctrine also bars Plaintiff's tort claim against the Representative Defendants, even though neither were parties to the contract between Defendant Symmetry and Plaintiff. The Court finds support in a non-precedential, though persuasive, Third Circuit opinion. In *Williams v. Hilton Group PLC*, the Third Circuit addressed whether the gist of the action doctrine barred tort claims against defendants who were not parties to the contract at issue. 93 F. App'x 384 (3d Cir. 2004). The district court in *Williams* had dismissed the plaintiff's tort claims, under the gist of the action doctrine, against a defendant who was not a party to the contract at issue. *Williams*, 93 F. App'x at 387. The Third Circuit affirmed, stating that "As the Pennsylvania courts have spelled out, the gist of the action doctrine bars tort claims against an individual defendant where the contract between the plaintiff and the officer's company created

the duties that the individual allegedly breached." *Id.*; *see also Oldcastle Precast, Inc. v. VPMC, Ltd.*, 2013 WL 1952090, at *8 (E.D. Pa. 2013) ("Here, we follow the rational of *Williams* and *Integrated* and will not preclude the application of the gist of the action doctrine regarding [plaintiff's] tort claims against [defendant] solely because he is not a signatory to the First Modification Agreement."); *Integrated Waste Solutions, Inc. v. Goverdhanam*, 2010 WL 4910176, at *11 (E.D. Pa. 2010).

Similarly, although Plaintiff did not have a contractual relationship with the Representative Defendants, Plaintiff cannot detach the Representative Defendants from their statuses as agents for Defendant Symmetry. Likewise, the contract between Defendant Symmetry and Plaintiff "created the duties that [the Representative Defendants] allegedly breached." *Id.* To the extent that the Representative Defendants interfered with Plaintiff's customers, they clearly did so as agents of Defendant Symmetry. Therefore, the gist of the action doctrine bars Plaintiff's tortious interference claim against the Representative Defendants.

The gist of the action doctrine bars Plaintiff's tortious interference claim against Defendant Symmetry because the tort claim is duplicative of the breach of contract claim. The gist of the action doctrine also bars Plaintiff's tort claim against the Representative Defendants as they were acting as employees or agents on behalf of Defendant Symmetry and the duties they allegedly breached were created by the Agreement of which Symmetry is a party to. Plaintiff's Count IV claim for tortious interference with contract against all Defendants is dismissed with prejudice.[3]

### E. *Punitive Damages*

In the ad damnum clause of Plaintiff's First Amended Complaint, Plaintiff seeks punitive damages. Defendants argue that punitive damages are an extraordinary remedy, and that Plaintiff has failed to plead facts sufficient to give rise to such a remedy. As a preliminary matter, the Court notes that the only surviving claims in this case are (1) breach of contract against Defendant Symmetry, and (2) unjust enrichment against the Representative Defendants.

In Pennsylvania, punitive damages are not available in an action that is based solely on breach of contract. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 147 (3d Cir. 2000) (citing *Johnson v. Hyundai Motor Am.*, 698 A.2d 631, 639 (Pa. Super. 1997)). Because unjust

---

[3] Because the gist of the action doctrine bars the claim, the Court need not address whether the claim also fails for lack of specificity.

enrichment is a "quasi-contract" remedy, punitive damages are unavailable in unjust enrichment claims as well. *See Motorola, Inc. v. Airdesk, Inc.*, 2005 WL 894807, at *3 (E.D. Pa. 2005); *see also Sunshine v. Reassure Am. Life Ins. Co.*, 2012 WL 748669, at *6 (E.D. Pa. 2012).

Thus, Plaintiff cannot seek punitive damages against Defendant Symmetry for breach of contract. Similarly, Plaintiff cannot seek punitive damages against the Representative Defendants for unjust enrichment. Therefore, Plaintiff's claim for punitive damages set forth in its ad damnum clause is dismissed in its entirety with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's claim for breach of contract (Count I) against the Representative Defendants is dismissed with prejudice. Plaintiff's claim for breach of the covenant of good faith and fair dealing against all Defendants is dismissed with prejudice. Plaintiff's claim for unjust enrichment (Count III) against Defendant Symmetry is dismissed with prejudice. However, Defendants' motion to dismiss the unjust enrichment claim against the Representative Defendants is denied. Plaintiff's claim for tortious interference (Count IV) is dismissed with prejudice. Lastly, Plaintiff's claim for punitive damages is dismissed with prejudice.

Plaintiff's claim for breach of contract against Defendant Symmetry and claim for unjust enrichment against the Representative Defendants remain.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.